

KEVIN KAMENETZ
*County Executive*

MICHAEL E. FIELD, *County Attorney*
*Office of Law*

February 28, 2017

The Honorable Catherine C. Blake
Chief Judge, United States District Court
For the District of Maryland
Garmatz Federal Courthouse
101 W. Lombard Street
Baltimore, Maryland 21201

> Re: *Heather Flanary v. Baltimore County, Maryland*
> Case No.: 16-CV-03422 CCB

Dear Judge Blake:

    This is to provide the Court with further authority in support of the County's Opposition to Plaintiff's Motion for Preliminary Injunction and its Memorandum in Support of Summary Judgment. In its papers the County has cited numerous cases from around the country which support the police department's reasonable actions in this case.

    The essential thread of these holdings is that police departments are entitled to take reasonable preventative measures in order to ensure – as best as possible – that officers are fit to perform their dangerous duties. "Especially in the context of police officers, employers do not violate the ADA by ensuring that officers are fit for duty." *Davis–Durnil v. Vill. of Carpentersville*, 128 F.Supp.2d 575, 580 (N.D.Ill.2001)). "*The ADA does not, indeed cannot, require a police department to forgo a fitness for duty examination or to wait until a perceived threat becomes real or questionable behavior results in injuries.*" *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1311 (11th Cir. 2013) (emphasis added), *quoting, Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir.1999). "Because police officers encounter extremely stressful and dangerous situations during the course of their work, and police departments place armed officers in positions where they can do tremendous harm if they act irrationally, ensuring members' fitness for duty is a business necessity vital to the operation of police departments." *Diaz v. City of Philadelphia*, 2012 WL 1657866 *11 (E.D. Pa. 2012), *citing, Watson, supra*, and *Pennsylvania*

*State Troopers Ass'n v. Miller*, 621 F.Supp.2d 246, 256 (M.D.Pa. 2008)). *See also*, *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir.2009) (business necessity for fire department to send firefighter for psychological evaluation); *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 99–100 (2d Cir.2003) (correctional facility); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146–47 (9th Cir.2010) (police department); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir.2007) (juvenile unit of police department). "In these 'public safety' workplaces, an employer may be justified in requesting a psychological exam on slighter evidence than in other types of workplaces because employees are in positions where they can do tremendous harm if they act irrationally, and thus they pose a greater threat to themselves and others." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 626 (6th Cir.2014); *see also*, *Coleman v. D.C.*, 794 F.3d 49, 73 (D.C. Cir. 2015) (police department).

Further, as in the instant case, where a police department is on actual notice that an officer is experiencing serious psychological stress, the department can take reasonable preventative measures even if the officer's job performance has not yet been impacted. *"Common sense suggests that an employer should not have to wait for an accident to occur to justify taking preventative steps." Leonard v. Electro-Mechanical Corp.*, 36 F.Supp. 3d 679, 687 (W.D. Va. 2014) (emphasis added). As the Sixth Circuit recently explained,

> Indeed, in many cases, the question whether one doctor is right that an employee can safely perform his job functions, or another doctor is right that the employee cannot, will be unknowable—unless the employer runs the very risk that the law seeks to prevent. Here, ***the City was not required to invite a section 1983 claim later in order to avoid an ADA claim now***. Right or wrong, the opinions upon which the City relied were objectively reasonable; and that means the City is not liable.

*Michael v. City of Troy Police Dep't*, 808 F.3d 304, 309 (6th Cir. 2015) (emphasis added).

Further, contrary to plaintiff's unsupported assertions, employers *can* require employees to comply with mandatory treatment as a condition of employment without violating the A.D.A. For example, this is a common practice when employers are dealing with employees with drug and alcohol problems – conditions that are protected disabilities under the A.D.A. *See, e.g., Chamberlain v. Securian*

2

*Financial Group, Inc,* 180 F. Supp. 3d 381, 401-402 (W.D.N.C. 2016) (employer did not violate A.D.A. by requiring recovering alcoholic to verify he was in treatment and attending Alcoholics Anonymous meetings).

And the threat of Sec. 1983 liability discussed by the Sixth Circuit in the *Troy* case, *supra,* is real. A recent suit involving a diabetic Philadelphia police officer is instructive. There the Philadelphia police department was on notice that one of its officers, who was a Type 1 diabetic, had experienced a number of hypoglycemic events which caused him to exhibit strange behaviors. *Washington-Pope v. City of Philadelphia,* 2015 WL 7450522 *1-3 (E.D. Pa. 2015). As a result of these incidents the officer was send to the department's employee medical services for a fitness for duty evaluation. The department's doctor instructed the officer to see an endocrinologist in order to get his diabetes under control. However,

> Officer Bailey was nevertheless allowed by Dr. Hayes and Employee Medical Services to return to duty and, ultimately, Officer Bailey did not see any specialist prior to the incident in question. Prior to the night of September 24, 2010, Officer Bailey was never required by the department, as a condition of his continued employment, to see a specialist to help him manage his diabetes.

*Id.* at 3.

Then, on the night of September 24, 2010, while out on routine patrol with his partner, Officer Bailey suffered another bout of hypoglycemia and he pulled his service weapon and pointed it at his partner's head while they were sitting side by side in their patrol car. His partner, Officer Washington-Pope was understandably terrified and subsequently developed PTSD. She later brought a *Monell* claim against the City of Philadelphia, claiming that the police department was deliberately indifferent to her substantive due process rights because it had a custom, policy or practice of failing to require diabetic officers to get the treatment necessary to manage their condition. One of plaintiff's experts, an assistant professor at Harvard Medical School, offered the unrebutted opinion that

> [p]olicies should have been in place to require Officer Bailey to relinquish his firearm and/or require his suspension from the police force if he declined to follow through with his treatment instructions, take medications prescribed, or in any way contribute to the lack of care of his diabetes.

*Id.* *14.

After a thorough review of the controlling Supreme Court precedents the District Court found that the plaintiff had proffered sufficient evidence upon which a jury could find that the City of Philadelphia's failure to ensure that officers received proper treatment for their diabetes constituted an official policy of deliberate indifference to the rights of the plaintiff and others similarly situated – including the public. *Id.* \*17. In reaching its holding the District Court reasoned that

> [T]he department command staff was aware that individuals with uncontrolled diabetes could act erratically or violently. The record also contains evidence that tends to show that the department command structure was aware of the fact that Officer Bailey was experiencing serious on-duty hypoglycemic breakdowns. Despite this acknowledged danger, the department failed to require its officers [to] seek medical care to bring their diabetes under control. The Court finds that the Plaintiff has raised an issue of material fact as to whether the department was acting with deliberate indifference to the risks that an officer with uncontrolled diabetes would cause.

*Id.* \*20.

First, it is noteworthy that nowhere in this thoughtful opinion does the District Court even hint that the A.D.A. would bar the City from insisting that its officers receive prescribed medical treatment as a condition of employment. Second, this case starkly illustrates the dilemma described by the Sixth Circuit in *Michael v. City of Troy Police Dep't., supra.* In sum, these cases stand for the proposition that Congress did not intend for municipalities to have to run the risk of incurring Sec. 1983 liability in order to avoid potential A.D.A. liability.

In the instant case it is undisputed that Officer Flanary testified to substantial and continuing PTSD symptoms in the summer of 2015 – two years after the shooting incident she was involved in. Once Chief Johnson was made aware of these continuing symptoms he believed it was incumbent on him to refer Flanary to see the departmental psychologist. He then felt that he must follow the doctor's professional medical advice – that Flanary needed to get back into therapy if she was to remain on patrol duty. From there the department has tried at every turn to make this mandatory treatment as unintrusive as possible and has taken pains to insure that Flanary's privacy would be protected.

Had Flanary simply abided by these reasonable and lawful directives she would never have been taken off patrol duty. Instead Flanary has filed suit in state

4

and federal court, insisting that she, and she alone, will decide whether she gets the prescribed treatment. Flanary's position - which was also espoused by her hired, out-of-state psychologist – is that a police department can never compel an officer to receive psychological treatment, and that Flanary's psychological status is none of the police department's business.

Flanary will no doubt again argue that her performance had been fine, notwithstanding these continuing PTSD symptoms. But this does not change the fact that Chief Johnson was on actual notice, based on Flanary's own testimony and the report of her own forensic psychiatrist, Dr. Sheehan, that she was *currently* suffering from serious PTSD symptoms in the summer of 2015. Indeed, like Dr. DeBernardo, Dr. Sheehan also recommended that Flanary get back into treatment.

As the cases above demonstrate, the A.D.A. did not require the County to simply ignore this information and hope for the best. In the event that Flanary did become involved in another shooting incident, or other alleged use of excessive force, the County would certainly be subject to potential *Monell* liability when discovery revealed that the police department was on notice of Flanary's continuing PTSD and did nothing about it.

The County thanks the Court for its further consideration of these issues. It is respectfully submitted that the motion for preliminary injunction should be denied, and that summary judgment should be granted in favor of the defendants.[1]

                                                Very truly yours,

                                                /s/

                                                Paul M. Mayhew
                                                Assistant County Attorney

PMM/cac

---

[1] On February 27, 2017 the Court of Special Appeals filed an unreported opinion in which it affirmed Judge Nagle's denial of Flanary's request for a preliminary injunction.